IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 15-cr-00303-RBJ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  THOMAS FORSTER GERHMANN, JR.

    Defendant.

---

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT THOMAS GERHMANN'S MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL**

---

The arguments made in the defendant's Motion for Judgment of Acquittal or in the Alternative for a New Trial [ECF No. 170] ("Def. Mot.") were made directly to the jury and rejected. Instead, the jury considered all of the evidence, evaluated the testimony of the witnesses (including the defendant himself) and found him guilty. There is no reason to disrespect the jury's conclusion. For the reasons set forth below, the government respectfully requests that the defendant's motion be denied.

## THE EVIDENCE OF CONSPIRACY WAS OVERWHELMING

### A.    Evidence showed the defendant had an agreement with his co-conspirators

The defendant's post-trial argument about John Davis is not new. The clash between the parties was directly presented to the jury. The government argued that the agreement was an implied and informal one; the defendant said there was no agreement at all. The government used the example of two neighbors who chat about how neat it would be to throw a

1

neighborhood party. The next day, one neighbor finds a check under his door from the other; the day after that, there's a check from another neighbor. The neighbor getting the checks opens an account to deposit the checks. There isn't a formal agreement. There's no handshake. But the neighbors each take action consistent with an agreement to throw a neighborhood block party: there's a common understanding of what the parties are trying to accomplish.

That's what happened here: parties acting in concert to accomplish the common goal of avoiding taxes on a large portion of their income. Davis's testimony at trial was that he, Gehrmann and Carlson agreed to have patients write checks directly to them, put those checks into a "cookie jar," and then met regularly to divide that income among themselves while keeping track of the divisions in a book labeled "secret records." Davis testified that the purpose of this arrangement was to avoid paying taxes on that income. Other evidence showed that Gehrmann, Carlson and Davis took actions consistent with that purpose:

- The former employees of Atlas/SpineMed uniformly testified that they were instructed to create two piles of checks: one pile of checks to be deposited into Atlas's account and one pile of checks to be given directly to the doctors from the "cookie jar."

- Hundreds of checks from the cookie jar were personally endorsed by Gehrmann and — despite the fact that he had employees making regular runs to the bank for his business — deposited by him (or his wife) into his private bank accounts, which he did not provide to his bookkeeper or accountant.

- Atlas's bookkeeper and accountant testified that they were given instructions by Gehrmann and Carlson to, respectively, prepare statements based on the checks deposited into the Atlas/SpineMed accounts and tax returns based on those statements. Neither the bookkeeper nor the accountant was told about the cookie jar income. All three defendants used the same accountant to prepare their taxes; none of them reported the cookie jar income.

- Although the partners of Atlas/SpineMed paid for bookkeeping services to keep track of their business's income, they (1) withheld information about the cookie jar information from that bookkeeper and, (2) instead met regularly among

themselves to divide up the money and account for it in a green book labeled "secret records."

The defendant puts great weight on co-conspirator John Davis's responses to leading cross-examination questions about whether he "agreed to conspire to defraud the U.S" or "agreed to conspire to defraud the IRS." Def. Mot. at 3-4. Leaving aside the confounding nature of questions about an "agreement to conspire" (an agreement to agree?), Davis's answer —that there was no formal agreement—did not preclude the jury from following the court's instruction (which was unchallenged)[1] and nevertheless conclude that Davis, Gehrmann and Carlson had an *informal* agreement to skim money from their practice without reporting it to the IRS. That's what Davis did. He told the jury there was no formal "agreement to conspire," but he also told them all about the informal common understanding between himself, Gehrmann and Carlson as well as the many ways in which they acted together to accomplish that goal. Employees at the practice similarly testified about the common understanding regarding the cookie jar checks. And the bookkeeper and accountant testified about the information and instructions they received from Gehmann and Carlson, which resulted in thousands of dollars of unreported income.

The jury was entitled to credit Davis's testimony, discredit Gehrmann's self-serving statements, look at the substantial benefits Gehrmann received as a result of his conduct, follow the court's instruction, and find Gehrmann guilty. "A defendant who acts in furtherance of the object of the conspiracy may be presumed to be a knowing participant." *United States v. Tranakos*, 911 F.2d 1422, 1430 (10th Cir. 1990). Gehrmann took action, every week, for several

---

[1] The Court instructed the jury that "[t]he government need not prove that the alleged conspirators entered into any formal agreement, or that they directly stated between themselves all the details of the scheme. Similarly, the government need not prove that all of the details of the scheme alleged in the indictment were actually agreed upon or carried out.

3

years to organize the clinic's income into two separate streams, deposit checks from one of those streams directly into personal accounts not reviewed by the business's bookkeeper, separately keep track of that income stream by himself (despite paying a bookkeeper to ostensibly keep track of the business's income for him), and thereby avoid paying taxes on a substantial portion of his income. — all while his business partners did the same thing. It was not unreasonable for the jury to conclude, as it did, that this was a conspiracy. *Cf. United States v. Pack*, 773 F.2d 261, 266 (10th Cir. 1985) (finding sufficient evidence that defendant participated in conspiracy to defraud the United States of tax revenue where, among other things, "the bookkeeping procedures were arranged in such a manner as to serve [the defendant]'s purpose" of evading taxes)

The defendant also places great weight on Davis's lack of knowledge about specific details of the scheme, pointing out that he didn't know about how Gehrmann benefited or how Gehrmann handled his personal taxes. Def. Mot. at 6. However, a co-conspirator is not required to know the details of the conspiracy or be privy to what his confederates do with the conspiracy's ill-gotten gains. *United States v. Noble*, 754 F.2d 1324, 1329 (7th Cir. 1985) (explaining that a co-conspirator "[does not] have to participate in every facet of the conspiracy scheme"). Davis did not get to see Gehrmann's personal bank accounts or tax returns. But the jury did. And, after viewing them in light of the other evidence, it concluded beyond a reasonable doubt that Gehrmann was taking action consistent with an agreement to siphon off a large portion of Atlas/SpineMed's income to avoid paying taxes on it.

In sum, the defendant's brief essentially asks the court to flip the Rule 29 standard on its head, view the evidence in the light most favorable to Gehrmann, and tell the public that the

4

twelve jurors in this case were unreasonable for convicting him. But the court should refrain from "weighing conflicting evidence or considering the credibility of witnesses" and instead ask whether the evidence *if believed* was enough to establish the elements. *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982) (concluding that district court abused its discretion in overturning verdict because it failed to view the evidence in the light most favorable to the government). For all of the reasons set forth above, it was.

## **THE EVIDENCE ESTABLISHED BEYOND A REASONABLE DOUBT THAT THE DEFENDANT KNOWINGLY AND WILLFULLY SUBMITTED FALSE TAX RETURNS**

The tax returns the defendant admitted to signing contained a clear statement warning him that they were being filed under penalty of perjury. *United States v. Bettenhausen*, 499 F.2d 1223, 1234 (10th Cir.1974) ("From proof of one's singing a return it may be believed that he knew the contents . . . ."). In addition, the defendant admitted during his testimony that he knew he was required to pay taxes on his income. Finally, the evidence at trial showed that he paid taxes on income that was reported, but then went to great lengths to avoid being required to report all of his income. The artifice of the "cookie jar" needlessly complicated the clinic's entire system of records and made no business sense:

- Gehrmann hired a bookkeeper. He and Carlson then gave the bookkeeper the clinics' bank accounts to keep track of their income;

- But because Gehrmann, Carlson and Davis used the "cookie jar," not every check went into the clinics' bank accounts;

- Because not every check went into the clinics' bank accounts, the bookkeeper did not actually know all of the clinics' income and, therefore, did not create accurate income statements;

- Because the bookkeeper did not create accurate income statements, and because Gehrmann, Carlson and Davis had an agreement to share their income equally, they had to come up with a separate way to accurately divvy up the clinics' total

5

income;

- To accurately account for the clinics' income, the staff at Atlas/SpineMed had to photocopy both the cookie jar checks and the clinic checks (even though, if everything had gone into the official bank accounts, the bank would have kept these records for them);

- To accurately account for the clinics' income, the staff at Atlas/SpineMed had to create "daily stat sheets" describing the clinic's total income, and not just the income deposited into the official bank accounts (even though, if everything had gone into the official bank accounts, the bookkeeper could easily have done this for them);

- To account for the discrepancy between the total income described in the daily stat sheets and the partial income reported on the books and derived from the clinics' bank accounts, Gehrmann, Carlson and Davis had to have a separate set of books — informal "sticky notes" at first and then a more formal ledger later on — so that they could accurately divide up the total income among themselves;

- When he filed each of his tax returns, Gehrmann had the fruits of his instructions to his staff: access to the daily stat sheets, showing income several thousand dollars *higher* than what was on the official books and, consequently, his tax returns.

The government argued to the jury that the only reason to use valuable time and resources on this complicated system was so that the conspirators would have an accurate accounting of their income *internally* (the daily stat sheets), but a way to falsely represent a different accounting (the books based on the clinic bank records) to the rest of the world (including the IRS).

Gehrmann's testimony that he knew he had to pay taxes, combined with the evidence of his involvement in the elaborate steps taken to avoid paying all of them, was sufficient to prove, beyond a reasonable doubt, that he knowingly and willfully submitted false returns. *United States v. Guidry*, 199 F.3d 1150, 1156 (10th Cir. 1999) (concluding that willfulness can be inferred from "concealment of assets or covering up sources of income," the "handling of one's affairs to avoid making the records usual in transactions of the kind," and "any conduct, the

likely effect of which would be to mislead or conceal"); *United States v. Ramsdell*, 450 F.2d 130, 134 (10th Cir. 1971) (explaining, in context of appeal from conviction for willful tax evasion, that "one guilty of this crime would hardly be expected to forgo his prior secretive design and confess his criminal intent and noting that "an inference of willfulness can be drawn from a consistent pattern of underreporting large amounts of income").

## **THERE IS NO REASON TO TRY THIS CASE AGAIN**

Deferring to the considered judgment of a jury is just and fair in this case. There is no doubt that the defendant and his co-conspirators committed overt acts within the statute of limitations and there is no good reason for the court to reject credibility determinations made by the jury.

The jury found the defendant guilty on Count 4, which charged him with willfully filing a false tax return on or about June 8, 2011. This act was also an overt act in furtherance of the conspiracy. Indictment, ECF No. 1, ¶ 25. And it was done within the five year statute of limitations. That ends the matter: there can be no reasonable doubt that the conspiracy continued past the five year statute of limitations. *United States v. Qayyum*, 451 F.3d 1214, 1218 (10th Cir. 2006).

The defendant states that the filing of a *personal* income tax return, as opposed to a *corporate*, income tax return, was not an overt act in furtherance of the conspiracy. Def. Mot. at 12. But defendant asserts no reason or legal support as to why the overt acts alleged in the indictment and proved to the jury should be rejected. Nor did the court's instruction distinguish between personal or corporate returns. Instead, the court's instruction (again, unchallenged by the defendant) told the jury that an overt act is "*any* act or transaction . . . that a conspirator

7

commits to accomplish some object of the conspiracy." By filing a personal return that falsely understated his income, the defendant was able to avoid paying all his taxes, which was the entire purpose of the conspiracy. *United States v. Kruse*, 606 F.3d 404, 409 n.3 (7th Cir. 2010) (rejecting same argument made by defendant convicted for conspiracy to defraud the United States: "To the extent [the defendant] contends that the Government did not prove an overt act, we note that the filing of false tax returns constitutes such an act.").

The fact that the defendant was convicted of both an overarching conspiracy and substantive crimes advanced by the conspiracy is not unfair or against the interests of justice. The defendant argues that because he "was convicted of Counts Three and Four he may not also be punished for a conspiracy that contains the identical conduct." This is a misstatement of the law. In fact, the case the defendant cites in support of his claim — *Blockberger v. United States* — says the opposite: "a single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, acquittal or conviction under either statute does not exempt the defendant for prosecution and punishment under the other." 284 U.S. 299, 304 (1932); *see also United States v. Pursley*, 474 F.3d 757, 769 (10th Cir. 2007) (rejecting claim that conviction for conspiracy and for aiding and abetting the filing of false tax returns violates the Double Jeopardy Clause).

The defendant agreed with others to defraud the IRS, and then filed false tax returns to advance that conspiracy. That was one course of conduct that involved the violation of separate criminal statutes. Here, each count was distinct: conspiracy requires proof of an agreement; filing a false tax return does not. The jury's verdict is not a violation of the Double Jeopardy Clause. *See United States v. Allred*, 932 F.3d 973, 973 (9th Cir. 1991) (unpublished) (rejecting

the same argument made by defendant).

Lastly, the defendant argues that the court should substitute its judgment of credibility for the jury's and order a new trial because John Davis "lied." But the defense had ample opportunity to draw out perceived inconsistencies and problems with Davis's testimony in its cross-examination and in closings. The defendant, too, had the benefit of listening to Davis's testimony first and then responding to it when he took the stand to describe his own account. The jury clearly rejected Gehrmann's declarations of innocence. Whether the jury believed John Davis or not is unknown, but one thing is certain: twelve Coloradoans unanimously agreed beyond a reasonable doubt that all of the evidence described in this filing and presented during the government's case proved that the defendant was guilty.

Just because the court *can* substitute its judgment for the jury's does not mean it *should*, especially when the Tenth Circuit has cautioned that the court should not grant a new trial unless the evidence "preponderates heavily against the verdict." *United States v. Evans*, 42 F.3d 586, 593094 (10th Cir. 1994). For all of the reasons set forth above, it did not. Gehrmann structured his business to avoid paying taxes on a lot of income, deceived his accountant, and filed false tax returns for years. The jury's verdict should stand.

## **CONCLUSION**

The law has "deep respect" for the fact-finding function of the jury. *White*, 673 F.2d at 302. The defendant had excellent legal counsel who ably and aggressively moved to discredit Davis, presented favorable evidence, and persuasively argued for alternative characterizations of the facts. The jury listened patiently to their cross-examinations, the testimony they presented, and the arguments they made. It respectfully disagreed. The fact that the defendant continues to

believe that his characterization of the evidence and facts should win the day does not make the jury unreasonable or rise to the level of evidence that "preponderates heavily against the verdict." Thomas Gehrmann already got a fair trial. He doesn't deserve another.

                              Respectfully submitted,

                              JASON R. DUNN
                              United States Attorney

By:    s/ *Bryan David Fields*
           SUNEETA HAZRA
           BRYAN DAVID FIELDS
           CONOR A. FLANIGAN
           Assistant United States Attorneys
           1801 California Street, Suite 1600
           Denver, Colorado 80202
           Telephone: (303) 454-0100
           Facsimile: (303) 454-0404
           Suneeta.Hazra@usdoj.gov
           Bryan.Fields3@usdoj.gov
           Conor.Flanigan@usdoj.gov
           Attorneys for the Government

## CERTIFICATE OF SERVICE

      I hereby certify that on this 7th day of January, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

      s/ *Bryan David Fields*
BRYAN DAVID FIELDS
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0404
Bryan.Fields3@usdoj.gov